UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re : | CHAPTER 11 |
| : | (Jointly Administered) |
| NEW CENTURY TRS HOLDINGS, INC,: | |
| *et al.*[1] : | Case No. 07-10416 (KJC) |
| Debtors : | |
| : | |
| MOLLY S. WHITE and, : | Adv. Pro. No. 10-55357 (KJC) |
| RALPH N. WHITE : | (Re: D.I. 47, 61, 111) |
| Plaintiffs, : | |
| : | |
| v. : | |
| : | |
| NEW CENTURY TRS HOLDINGS, INC,: | |
| *et al.* : | |
| Defendants : | |

MEMORANDUM REGARDING PLAINTIFF'S
MOTION FOR RECONSIDERATION, MOTION TO
COMPEL DISCOVERY, AND REQUEST FOR JUDICIAL NOTICE [2]

BY: KEVIN J. CAREY, UNITED STATES BANKRUPTCY JUDGE

Background

Molly S. White and Ralph N. White (the "Whites") filed the above-captioned adversary

proceeding against the Debtors by filing a complaint to determine dischargeability of debt (the

---

[1]The Court approved joint administration of the chapter 11 cases of New Century TRS Holdings, Inc. and fourteen related entities by Order dated April 3, 2007 (D.I. 52). New Century Warehouse Corporation, a California corporation, filed a chapter 11 bankruptcy petition on August 3, 2007. The jointly administered debtors and New Century Warehouse Corporation are referred to collectively herein as the "Debtors."

[2]This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding pursuant to 28 U.S.C. 157(b)(1) and (b)(2)(B) and (I).

"Complaint"), which contains twelve counts[3] arising out of a consumer mortgage loan transaction between debtor New Century Mortgage Corporation ("NCMC") and the Whites that closed on July 26, 2006 (the "Mortgage Loan").[4]

On December 15, 2010, the New Century Liquidating Trust (the "Trust"), by and through Alan M. Jacobs, the New Century Liquidating Trustee (the "Trustee"), moved to dismiss the Complaint (the "Motion to Dismiss)(Adv. D.I. 10). By Memorandum and Order dated June 7, 2011, I granted the Motion to Dismiss, in part, by dismissing Counts II, VIII and XII of the Complaint for lack of subject matter jurisdiction. The remainder of the Motion to Dismiss was denied. (D.I. 59 and D.I. 60). *White v. New Century TRS Holdings, Inc. (In re New Century TRS Holdings, Inc.)*, 450 B.R. 504 (Bankr. D.Del. 2011) (the "Dismissal Decision").

Count II of the Complaint sought rescission of the Mortgage for violations of the Truth in Lending Act, 15 U.S.C. §1601 *et seq.* ("TILA"). Count VIII of the Complaint sought declaratory judgment that the Debtors' actions were fraudulent and violated the Bankruptcy Code and

---

[3]The twelve counts in the Complaint are: (i) violation of RESPA, 12 U.S.C. §2601 *et seq.* and HUD's Regulation X (24 C.F.R. §3500), (ii) Rescission of Mortgage - Truth-in-Lending Act, (iii) Violation of Florida Deceptive and Unfair Trade Practices Act §501.201 *et seq.*, (iv) Fraud, (v) Second Violation of Florida Deceptive and Unfair Trade Practices Act, (vi) Aiding and Abetting Breach of Fiduciary Duty, (vii) Fraud by Concealment, (viii) Declaratory Judgment, (ix) Civil Conspiracy, Fla. Stat. §895.01-895.06, (x) Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1962(c), (xi) Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1962(d), and (xii) Equitable Tolling.

[4]Attached as Exhibit B to the Complaint is a copy of an Adjustable Rate Note, in which the Whites promise to pay the original principal amount of $272,500.00 to NCMC (the "Note"). Attached as Exhibit A to the Complaint is a copy of a Mortgage, in which the Whites grant a mortgage lien against their real property located in Volusia County, Florida in favor of NCMC to secure repayment of the Note (the "Mortgage").
Although the Note and Mortgage appear to be signed by the Whites, the Complaint states that "Nothing in this Complaint should be construed that Plaintiffs [the Whites] concedes to or otherwise acknowledges [*sic*] that the signatures on any documents referenced or attached hereto to be authentic and those belonging to the Plaintiffs. The Plaintiffs specifically deny such signatures and reserves [*sic*] the right to review." Complaint, ¶14.

Florida's Uniform Fraudulent Transfer Act, thereby permitting the Mortgage to be cancelled. Count XII of the Complaint, entitled "Equitable Tolling," sought "rescission of the loan and the cancellation of the security interest . . . ."[5] The Trustee moved to dismiss Counts II, VIII and XII for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), made applicable to this proceeding pursuant to Fed.R.Bankr.P. 7012.

In the Dismissal Decision, I determined that the Rule 12(b)(1) motion presented a factual challenge to jurisdiction. *New Century*, 450 B.R. at 509. When reviewing a factual challenge to jurisdiction, a court may consider evidence outside the pleadings, including affidavits, depositions and testimony, to resolve any factual issues bearing on jurisdiction. *Gould Elec. Inc. v. United States,* 220 F.3d 169, 176 (3d Cir. 2000) *holding modified on other grounds by Simon v. United States*, 341 F.3d 193, 204 (3d Cir. 2003); *Walker v. United States,* Civ. No. 11-866, 2013 WL 5890270, *3 (D.Del. Oct. 31, 2013). The court "is not confined to the allegations of the complaint, and the presumption of truthfulness does not attach to the allegations in the complaint." *Walker,* 2013 WL 5890270, *3 quoting *Shahin v. Delaware Dept. Of Fin.,* Civ. No. 10-188-LPS, 2012 WL 1133730, *3 (D.Del. Mar. 30, 2012).

When deciding the subject matter jurisdiction challenge, I considered: (i) allegations in the Complaint that the Debtors transferred their interest in the Note and Mortgage on March 8, 2007, less than a month prior to the Debtors' chapter 11 bankruptcy filing; and (ii) a Declaration by Donna Walker attached to the Trustee's Motion to Dismiss, and a supplemental declaration by Donna Walker (together, the "Walker Declarations"), stating that the Trustees' records showed

---

[5]The Whites' Motion for Reconsideration limits its request for reconsideration of the dismissal of Count II and Count VIII. Count II and Count VIII will be referred to herein as the "Rescission and Cancellation Claims."

that the Debtors transferred their interest in the Note and Mortgage to Morgan Stanley Capital Inc. ("Morgan Stanley") on September 21, 2006. *New Century*, 450 B.R. at 509. I then concluded:

> Whether the Mortgage Loan was transferred on September 26, 2006 or March 8, 2007, both sides agree that the Debtors transferred the Mortgage Loan prior to the bankruptcy filing. Accordingly, the Debtors had no interest in the Mortgage Loan as of the petition date and the Mortgage Loan was not property of the estate. 11 U.S.C. §541.
>
> . . . .
>
> [S]ince the Debtors transferred their interest in the Mortgage Loan prepetition, the Debtors did not, at the time of the bankruptcy filing, and do not now, have any interest in the Note or Mortgage; hence, this Court is without subject matter jurisdiction to order rescission or cancellation of the Mortgage Loan, now held by an unrelated third party. Moreover, any modification or adjustment to the Mortgage Loan would have no effect or impact on the Debtors' estate or the Liquidating Trust. *See Scott v. Aegis Mortgage Corp. (In re Aegis Mortgage Corp.)*, 2008 WL 2150120, *5 (Bankr. D.Del. May 22, 2008) (A declaration as to the rights of parties under a mortgage that was transferred prior to the bankruptcy filing will not alter the debtors' rights, liabilities, options or freedom of action because the debtors are no longer a party to it.). *See also In re Resorts Int'l, Inc.*, 372 F.3d 154, 168-69 (3d Cir. 2004)(Post-confirmation, a bankruptcy court's jurisdiction is limited to matters in which "there is a close nexus to the bankruptcy plan or a proceeding, as when a matter affects the interpretation, implementation, consummation, execution, or administration of a confirmed plan or incorporated litigation trust agreement.").

*New Century*, 450 B.R at 510.

The Whites filed a motion for reconsideration of the Dismissal Decision, arguing that, despite the allegations they included in their Complaint, the Court should consider certain evidence that directly contradicts those allegations and the statements in the Walker Declarations and should conclude that the Debtors did *not* transfer their interest in the Mortgage Loan prior to filing bankruptcy (the "Motion for Reconsideration") (D.I. 61). Intertwined with the Motion for Reconsideration are other motions and pleadings filed by the Whites, including a Motion to

4

Compel Discovery (D.I. 47) and a Request for Judicial Notice (D.I. 111), which also assert that the Debtors did not transfer their interest in the Mortgage Loan pre-petition.

For the reasons set forth below, the Whites' Motion to Compel Discovery and Motion for Reconsideration will be denied and the Request for Judicial Notice will be granted in part and denied in part.

Discussion

(1)     The Motion for Reconsideration - Introduction

Federal Rule of Bankruptcy Procedure 9023, which incorporates Fed.R.Civ.P. 59, governs motions for reconsideration. Fed.R.Civ.P. 59(e). A motion to alter or amend a judgment under Rule 59(e) must be grounded on (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct a clear error of law or prevent manifest injustice. *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). A motion for reconsideration should not be used to reargue the facts or applicable law. *Official Comm. of Unsecured Creditors v. Catholic Diocese of Wilmington, Inc. (In re Catholic Diocese of Wilmington, Inc.)*, 437 B.R. 488, 490 (Bankr. D. Del. 2010). "Motions for reconsideration should be granted sparingly because of the interests in finality and conservation of scarce judicial resources." *Pennsylvania Ins. Guar. Ass'n v. Trabosh*, 812 F.Supp. 522, 524 (E.D. Pa. 1992).

The crux of the Whites' argument for reconsideration of the Dismissal Decision is that the Court overlooked available evidence and should consider new evidence demonstrating that the Debtors did not transfer their interest in the Whites' Mortgage Loan prior to filing bankruptcy. The Whites argue that their Mortgage Loan is an asset of the Debtors' bankruptcy estate, and this Court has jurisdiction to consider the Rescission and Cancellation Claims. To

support their argument, the Whites rely (at least in part) on the Motion to Compel Discovery and the Request for Judicial Notice. Therefore, I will consider those motions before the Motion for Reconsideration.

(2)     The Motion to Compel Discovery

While the Trustee's Motion to Dismiss was pending, the parties continued with discovery related to the Whites' Complaint. The Whites filed a Motion to Compel Discovery (D.I. 47), arguing that the Trustee failed to respond properly and asserted unreasonable objections to their discovery requests. The Trustee filed a response opposing the Motion to Compel Discovery (D.I. 56). At a hearing May 23, 2012, Mr. White stated that he was seeking only one document - - a power of attorney from the Debtors to Countrywide Home Loans, Incorporated ("Countrywide") (Tr. 5/23/2012, D.I. 94, at 19:17-24).[6] The balance of the Whites' requests in the Motion to Compel Discovery were withdrawn. (*Id.* at 22:4-10). The Trustee agreed to "double-check" his files and turn over to the Whites any power of attorney from the Debtors to Countrywide that could be located. (*Id.* at 19:25 - 21:24).

On June 1, 2012, the Trustee filed a "Certification of Counsel Regarding Plaintiff's Motion to Compel Discovery" (D.I. 96) (the "COC"), stating that the Trustee searched his files and provided the Whites with two powers of attorney between the Debtors and Countrywide (the

---

[6]The apparent basis for Mr. White's request for a power of attorney between the Debtors and Countrywide is based upon the certified copy of an Assignment of Mortgage filed with the Volusia County Clerk of Court's Office in Daytona Beach, Florida, in which the Assignor (described as "New Century Mortgage Corporation by Countrywide Home Loans, Inc. (CWI), Attorney-in-fact") transferred to the Assignee ("Deutsche Bank National Trust Company as Trustee for Morgan Stanley ABS Capital I Inc. Trust 2006-NC5, Mortgage Pass-Through Certificates, Series 2006-NC5") all right, title and interest in the Mortgage dated July 26, 2006 from Ralph N. White and Molly S. White to Assignor. (D.I. 89). The Assignment of Mortgage was executed on November 8, 2011 and filed on November 23, 2011.

"Countrywide Powers of Attorney"). The Trustee also noted that it had not provided those documents in response to the Whites' original document request because the original request sought a power of attorney applicable to the Whites' Mortgage Loan, and the Trustee could not determine whether the Countrywide Powers of Attorney were related in any way to the Whites' Mortgage Loan. The Whites filed an objection to the COC (D.I. 100), arguing that the COC did not adequately explain why the Countrywide Powers of Attorney were not produced earlier and that the Trustee did not discuss whether any attempt was made to locate a power of attorney to Countrywide signed by Holly Etlin, as suggested by the Whites.[7] The Whites also argue that the evidence (*i.e.,* the Walker Declarations and the Countrywide Powers of Attorney) is contradictory. The Whites, alleging that the Trustee may be withholding documents, asked the Court not to deny the Motion to Compel Discovery based upon the COC.

Upon consideration of the foregoing, I conclude that the Whites' Motion to Compel Discovery should be denied. The Trustee has complied fully and reasonably with the Whites' request. I am satisfied with the Trustee's certifications regarding the sufficiency of his search efforts in connection with the original document request and Mr. White's request made at the May 23, 2012 hearing for any Countrywide powers of attorney.

(3)   <u>The Request for Judicial Notice</u>

On August 23, 2012, the Whites filed a Request for Judicial Notice Pursuant to Federal Rules of Evidence 201 (the "Request for Judicial Notice") in both this adversary case and the

---

[7] Holly Etlin was appointed as the President, Chief Executive Officer and Chief Restructuring Officer of NCMC on June 8, 2007. (Declaration of Holly Felder Etlin in Support of the Second Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of April 23, 2008, ¶ 3, Main Case D.I. 6407).

main bankruptcy case. (D.I. 111, Main Case D.I. 11011). The Whites asked this Court to take judicial notice of certain case law and treatises, documents filed with the Clerk of the Court's Office in Volusia County, Florida, publications of the National Bureau of Economic Research, a filing with the Security and Exchange Commission, "findings of fact" in the Dismissal Decision, the Trustee's response to the Whites' Requests for Admissions, documents filed in the main bankruptcy case, and testimony of the Trustee and Debtors' counsel offered at hearings on various motions in the main bankruptcy case. The Trustee filed a response to the Request for Judicial Notice (Main Case D.I. 11021) (the "JN Response"), objecting to many of the Whites' requests.[8]

Rule 201(b) of the Federal Rules of Evidence provides that: "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the

---

[8]In the JN Response, the Trustee asserted that the Whites' Request for Judicial Notice did not indicate whether it related to the matters under advisement in the adversary proceeding (*i.e.*, the Motion for Reconsideration and the Motion to Compel Discovery) or the Trustee's Motion for Entry of an Order to Determine that the Debtors have Complied with the Order Establishing Bar Dates for Filing Proofs of Claim and Approving Form, Manner and Sufficiency of Notice Thereof (Main Case D.I. 10824) (the "Constructive Notice Motion"). The Trustee objected to the Request for Judicial Notice because (i) it was untimely if considered with respect to the Constructive Notice Motion, since the evidentiary hearing was held and the record was closed three months prior to the filing of the Request for Judicial Notice, and (ii) several of the items included in the Request for Judicial Notice are not appropriate for Judicial Notice. The Whites filed a Reply to the JN Response (Main Case D.I. 11025).

I have already issued a decision with respect to the Trustee's Constructive Notice Motion (Main Case D.I.s 11233, 11234), therefore any request for judicial notice or objection thereto applicable to the Constructive Notice Motion in the main bankruptcy case are moot. *In re New Century TRS Holdings, Inc.*, No. 07-10416, 2013 WL 4671734 (Bankr.D.Del. August 30, 2013).

The Whites filed a certification of no objection to the Request for Judicial Notice in the adversary proceeding (the "CNO") (D.I. 114), because the Trustee's response to the Request for Judicial Notice was filed in the main case, but not this adversary proceeding. The Trustee filed an objection to the CNO (D.I. 115), which was followed by the Whites' filing of an objection to the Trustee's response (D.I. 117). Because the Request for Judicial Notice filed in the adversary is identical to the Request for Judicial Notice filed in the main case, and the Trustee filed a timely response to the Request for Judicial Notice in the main case, I will not consider the Whites' CNO. I will consider the Request for Judicial Notice (and the JN Response) as related to the Motion for Reconsideration, since it was filed in this adversary proceeding.

trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b). Rule 201(c)(2) provides that the court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed.R.Evid. 201(c)(2).

The Whites' Request for Judicial Notice will be granted, in part, and denied, in part, as follows:

(i) I will not take judicial notice of the case law attached as Exhibits A, B, and C to the Request for Judicial Notice, or to the citation to 4 COLLIER ON BANKRUPTCY §524.02, since the case law and treatise are not "facts," however, I will consider the Whites' citations to those sources;

(ii) I will take judicial notice of the documents filed in the Clerk of the Court's Office, Volusia County, Florida, attached as Exhibits D, E, and F to the Request for Judicial Notice (and also filed at D.I. 78 and D.I. 89), to the extent the documents show that filings were made in Volusia County, Florida, but not for the truth of the averments within those documents. *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd.*, 181 F.3d 410, 426-27 n.7 (3d Cir. 1999) ("Recently, courts and commentators have paid more attention to the distinction between judicially noticing the existence of prior proceedings and judicially noticing the truth of the facts averred in those proceedings. . . . . It has been suggested that the appropriate analogy is the hearsay rule which allows an out-of-court statement to be admitted into evidence for purposes other than establishing the truth of the statement."); *O'Boyle v. Braverman,* 337 Fed. Appx. 162, 164-65

(3d Cir. 2009) (deciding that a district court could take judicial notice of state court filings in resolving a Rule 12(b)(6) motion for the purpose of determining the date on which the prior litigation was dismissed, as the existence of the filings was not subject to reasonable dispute);

(iii) I will not take judicial notice of the internet articles cited by the Whites which, generally, discuss the Debtors or the "subprime crisis." A court may take judicial notice of the publication of certain articles, for example, to indicate what was available in the public realm at a particular time *(See Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Management, L.P.*, 435 F.3d 396, 401 n. 15 (3d Cir. 2006)), but, here, the Whites provide no reason to support their request for judicial notice of the articles. The facts to be gleaned from these articles are not facts that can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b);

(iv) I will take judicial notice that the Whites filed a Reply at D.I. 108, but not for the truth of the averments within that filing;

(v) I will not take judicial notice of D.I. 79, which is a filing with the Securities and Exchange Commission ("SEC"), accompanied by an Attestation of the SEC's Records Officer. A court may take judicial notice of a properly authenticated public disclosure document filed with the SEC. *In re NAHC, Inc. Securities Litigation,* 306 F.3d 1314, 1331 (3d Cir. 2002) citing *Oran v. Stafford,* 226 F.3d 275, 289 (3d Cir. 2000). However, the copy filed at D.I. 79 is incomplete, since it is missing Article II (pages 54 - 59).

(vi)   I will take judicial notice of the Dismissal Decision, filings in the main bankruptcy case, admissions by the Trustee in discovery related to this adversary, and testimony of the Debtors' counsel and the Trustee from evidentiary hearings in the main bankruptcy case, but I will *not* take judicial notice of the Whites' paraphrasing of the testimony, admissions, the content of the Dismissal Decision, or the filings as set forth in the Request for Judicial Notice; and

(vii)  I will not take judicial notice of the "Additional Public Records" referred to as a "list of all filers in the New Century Bankruptcy Case" in PACER, because the Whites have not provided the necessary information or explanation of their request.

(4)   <u>Motion for Reconsideration of the Dismissal Decision</u>

With the foregoing resolved, I now return to the Motion for Reconsideration. After the Motion to Compel was filed, the Whites filed a "Letter to the Court" (the "Letter") (D.I. 99) further explaining their position that the Debtors' interest in the Mortgage Loan was *not* transferred pre-petition.[9] The Trustee filed a response refuting the assertions in the Letter (the "Response") (D.I. 103). The Whites filed a reply to the Trustee's Response ("Reply") (D.I. 108). I will consider the Letter, Response and Reply to be supplemental briefing on the Motion for Reconsideration.[10]

---

[9] A copy of the Whites' "Letter to the Court" was also filed as D.I. 101.

[10] The Letter also raises objections to the Trustee's COC filed with respect to the Motion to Compel Discovery. Nothing in the Letter, Response and Reply changes my conclusion that the record before me demonstrates that the Trustee and his counsel acted reasonably and in good faith in responding to the Whites' discovery requests, specifically with respect to the powers of attorney.

In deciding to dismiss the Rescission and Cancellation Claims for lack of subject matter jurisdiction, I relied upon allegations made by the Whites in their Complaint and upon the Walker Declarations filed by the Trustee and determined that the Debtors' interest in the Mortgage Loan was transferred pre-petition. In the Motion for Reconsideration, the Whites argue that: (i) the Walker Declarations are unreliable for lack of personal knowledge or as hearsay; and (ii) new evidence contradicts the Complaint's allegations and the Walker Declarations regarding the timing of the Debtors' transfer of the Mortgage Loan.

(a) <u>The Walker Declarations</u>

In their response to the Trustee's Motion to Dismiss, the Whites argued that the Walker Declarations should be stricken. The Whites' Motion for Reconsideration again argues against the Court's consideration of the Walker Declarations, asserting that the declarations were not based on personal knowledge or contained hearsay. However, a motion for reconsideration cannot be used to relitigate issues that the Court has already decided, nor should parties make additional arguments that should have been made before judgment. *Smith v. City of Chester*, 155 F.R.D. 95, 97 (E.D. Pa. 1994). The Whites' request to re-litigate the sufficiency of the Walker Declarations is denied.[11]

---

[11] However, I note that the Whites have not cast any doubt on the reliability of the Walker Declarations. In the Walker Declarations, Ms. Walker declared, under penalty of perjury, that she was employed in the Accounting Department of NCMC from 1998 to 2007, and was a Vice President during the latter stage of her time there. (D.I. 11). Starting in 2007, Ms. Walker stated that she worked as a consultant for the Debtors and, thereafter, for the Liquidating Trustee. (*Id.*). She stated her familiarity with the Debtors' books and record-keeping procedures, and provided the details of her review of the Debtors' books and records with respect to the Debtors' transfer of the Whites Mortgage Loan. (*Id.*). The Whites contend that Ms. Walker's Declarations fail to state that "she was personally involved with the input of data nor does she indicate in any way that she personally witnessed this information as declared in her declarations." (Motion for Reconsideration, p. 7, ¶3).

Courts have held that "personal knowledge can come from [a] review of the contents of files and
(continued...)

(b) <u>The Examiner's Report</u>

The Whites also look to various sources, some provided during discovery, as evidence that the Debtors did not transfer their interest in the Mortgage Loan pre-bankruptcy. The Whites rely on certain findings in the Final Report of Michael J. Missal Bankruptcy Court Examiner, dated February 29, 2008, (main case D.I. 5518), about the number of loans that investors refused to accept from the Debtors because the loan files lacked the necessary documents. (*See* D.I. 65 at 5).[12] For example, the Whites cite to a chart in the Examiner's Report showing that September

---

[11](...continued)
records." *Sia v. BAC Home Loans Servicing (In re Sia)*, 2013 WL 4547312, *5 (Bankr. N.J. Aug. 27, 2013) quoting *Washington Cent. Railroad Co., Inc. v. Nat'l Mediation Board*, 830 F.Supp. 1343, 1353 (E.D.Wash. 1993). A custodian of records "or another qualified witness" may testify about business records to fall within an exception to the rule against hearsay. Fed.R.Evid. 803(6)(D). "A qualified witness is someone 'with knowledge of the procedure governing the creation and maintenance of the type of record sought to be admitted.'" *Sia*, 2013 WL 4547312 at *6 quoting *U.S. v. Dominguez*, 835 F.2d 694, 698 (7th Cir. 1987). "A qualified witness 'need not have personally participated in the creation of the document nor know who actually recorded the information.'" *Id.* Further, "a witness is qualified to lay the foundation for business records if she is familiar with the record-keeping procedures of the organization." *Id.* citing *Dyno Const. Co. v. McWane, Inc.*, 198 F.3d 567, 576 (6th Cir. 1999).
  When a court evaluates the merits of a jurisdictional challenge, a court may consider evidence outside the pleadings, including affidavits, depositions and testimony, to resolve any factual issues bearing on jurisdiction. *Gould Elec.*, 220 F.3d at 176; *Walker*, 2013 WL 5890270 at *3. The plaintiff has the burden of proving that jurisdiction exists. *Mortensen v. First Fed. Sav. & Loan Assoc.*, 549 F.2d 884, 891 (3d Cir. 1977). The Whites have failed to meet this burden for the Rescission and Cancellation Claims. Further, the Whites have demonstrated neither that the Walker Declarations are invalid nor that my reliance on them was misplaced. Ms. Walker's experience with the Debtors and knowledge of their record-keeping procedures makes her at least a qualified witness (if not a custodian of records) whose statements in support of the Trustee's Motion to Dismiss were reliable. Moreover, her statements are consistent with the Trustee's evidence throughout this bankruptcy case about the Debtors' books and records and the transfers of mortgage loans.

[12]The Whites also allege that the Trustee is acting in bad faith when relying on certain documents, such as a Purchase Price and Terms Agreement (the "PPTA") dated May 24, 2006 between the Debtors and Morgan Stanley in responding to the Whites' Letter. (D.I. 103, Ex. A). The Whites argue that the Trustee is or should be aware that the PPTA is fabricated based upon an opinion letter by counsel for NC Capital Corporation, dated November 28, 2006, which states, in part, that "I have not examined the actual Mortgage Notes, the endorsement thereof, the Mortgages, the Assignments or the other documents in the Mortgage Files relating to the Mortgage Loans (collectively, the "Mortgage Documents"), and I express no opinion concerning the conformity of any of the Mortgage Documents to
(continued...)

2006, which was the month the Debtors assert that the Whites' Mortgage Loan was transferred, had the highest "kick out rate" of loans in 2006, when measured by value ($978,959,226.00) (*Id.* citing Examiner Report at 162).[13] The general statements in the Examiner's Report about the high kick-out rates in 2006 does not indicate that any specific information in the Debtors' books and records about the transfer of White's Mortgage Loan is incorrect.

       (c)    <u>The State Court Filings</u>

The Whites also rely on state court filings as evidence that the Mortgage Loan was not transferred pre-bankruptcy. First, the Whites point to a complaint was filed in the Circuit Court for Volusia County, Florida (the "State Court") by Deutsche Bank National Trust Company as Trustee for Morgan Stanley ABS Capital I Inc. Trust 2006-NC5, Mortgage Pass-Through Certificates, Series 2006-NC5 ("Deutsche Bank") against the Whites, which asserted two claims: (i) re-establishment of the lost promissory note; and (ii) mortgage foreclosure (the "Mortgage Foreclosure Complaint").[14] The Whites argue that the copy of the Note attached to the Mortgage Foreclosure Complaint, filed more than a year after the Debtors' bankruptcy petitions, did not have an appropriate endorsement evidencing any transfer. Exhibit C to the Whites' Motion for Reconsideration is a copy of the original Note that was filed by Deutsche Bank in the State Court

---

[12](...continued)
the requirements of the Agreements." Nothing in that statement of counsel supports the Whites' assertion that the Trustee or Debtors' counsel was "clearly was aware of the fraudulent nature of the documents . . . ." (D.I. 108, ¶37, ¶38, Ex. E). The Whites have taken the language in the letter out of context. Allegations of bad faith based upon the November 28, 2006 letter are wholly unsupported.

[13] The Examiner's Report describes "kickouts" as loans that the Debtors sought to sell to investors in the secondary market that were rejected by those investors due to defective appraisals, incorrect credit reports and missing documentation. Examiner Report, p. 109.

[14] The Whites attached a certified copy of the Mortgage Foreclosure Complaint, with exhibits, as Exhibit A to the Motion for Reconsideration.

proceeding on August 30, 2010, which included a "stamped endorsement" signed (but undated) by "Steve Nagy, V.P. Records Management" on behalf of NCMC. The Whites argue that the August 30, 2010 filing is evidence that the Note was not transferred by the Debtors until 2010, *i.e.*, years after the bankruptcy filing.

The Whites also assert that the Assignment of Mortgage, assigning the Whites' Mortgage to Deutsche Bank by Countrywide, as "attorney-in-fact" for NCMC, was executed on November 8, 2011, and filed with the Volusia County Clerk of Court's Office on November 23, 2011, thus proving that transfer did not occur until more than four years after the Debtors filed bankruptcy. (*See* D.I. 78, D.I. 89).[15]

The post-petition State Court Filings describe actions taken by third parties - - *i.e.*, Morgan Stanley, Deutsche Bank or Countrywide - - to document their asserted rights with respect to the Mortgage Loan. The dates of the State Court Filings do not provide evidence of the date the Debtors transferred their interest in the Mortgage Loan and, therefore, do not change my conclusion that Debtors transferred their interest in the Whites' Mortgage Loan pre-petition.

The Whites also argue that the State Court Filings provide evidence of flaws in the chain of assignment of the Note and Mortgage from NCMC to the Deutsche Bank. The Whites claim that the Morgan Stanley ABS Capital I Inc. Trust 2006-NC5, Mortgage Pass-Through Certificates, Series 2006-NC5 (the "Trust") was not a valid trust under New York law that could take delivery of the Mortgage Loan at the time of the Debtors' transfer. (D.I. 108). The Whites further question the authority of Countrywide to act as attorney-in-fact for NCMC. (*Id.*). Any

---

[15]The Mortgage Foreclosure Complaint, including its exhibits, Deutsche Bank's filing of the Original Promissory Note, and the Assignment of Mortgage shall be referred to herein as the "State Court Filings."

15

challenges to the rights and claims of the third parties, or to the validity or effectiveness of the third parties' filings, must be addressed by a court with appropriate jurisdiction over those third parties.

The Trustee points out, however, that the State Court already determined that Deutsche Bank is the proper holder of the Mortgage Loan by granting Summary Final Judgment of Foreclosure in favor of Deutsche Bank on January 11, 2012, and specifically finding that '[t]he original promissory note [was] presented and delivered to the Court." (D.I. 103, Ex. B).[16] By Order dated January 26, 2012, the State Court denied the Whites' Motion for Reconsideration and Motion to Vacate Order of Summary Judgment, in which the Whites argued that Deutsche Bank did not prove that it owned the Note and Mortgage as of the date the Mortgage Foreclosure Complaint was filed. (D.I. 103, Ex. C).

"Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." *Youssef v. Dept. of Health and Senior Serv.*, 524 Fed. Appx. 788 (3d Cir. 2013) quoting *Allen v. McCurry*, 449 U.S. 90, 96, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). Florida courts have recognized that "[c]ollateral estoppel is a complete defense to the relitigation of an issue when there is an identity of parties or their privies, an identity of issues and an actual litigation thereof in the first suit. *Southeastern Fidelity Ins. Co. v. Rice*, 515 So.2d 240, 242 (Fla. 4th Dist. Ct. App. 1987). When deciding whether there was an "identity of parties or their privies," the *Rice* Court determined that "privity is defined as 'mutual or successive relationships to the same right of

---

[16] Upon presentation of the original promissory note, Count I of the Mortgage Foreclosure Complaint (requesting re-establishment of the lost promissory note) was deemed moot. *Id.*, ¶3.

property, or such an identification of interest of one person with another as to represent the same legal right.'" *Id.*, quoting *Black's Law Dictionary* 1079 (5th ed. 1979). Here, the Florida State Court has already decided that a valid transfer of the Mortgage Loan occurred. The Debtors and Deutsche Bank meet the "identity of parties" requirement by their successive relationship to the same property, *i.e.*, the Mortgage Loan. Accordingly, the Whites' current claims as to the invalidity of the Debtors' transfer of the Mortgage Loan are barred by collateral estoppel.

The Whites argue that the Mortgage Foreclosure Complaint was filed in violation of the automatic stay and, therefore, the Summary Final Judgment of Foreclosure is *void ab initio*. The automatic stay bars actions against a debtor, a debtor's property or property of the estate. 11 U.S.C. §362(a). Deutsche Bank filed the Mortgage Foreclosure Complaint against the Whites to enforce its rights under the Note and Mortgage. There is no basis for finding that the automatic stay arising from the Debtors' bankruptcy filing was applicable to the Mortgage Foreclosure Complaint.

Neither the Debtors nor the Trustee have claimed any interest in the Whites' Mortgage Loan. Quite to the contrary, the Trustee has disavowed - - consistently - - *any* property interest in the Whites' Mortgage Loan. The Whites have not provided any "new evidence" to alter my conclusion that the Debtors transferred their interest in the Mortgage Loan prepetition. The Whites' Rescission and Cancellation Claims implicate only the rights of third parties who are not before this Court. As I have written previously with respect to other *pro se* claimants in this case:

> To the extent the Plaintiff seeks further relief regarding the validity of
> assignments and the enforceability of the note or deed of trust, she must address
> these claims in an appropriate forum with the participation of the entity or entities

now claiming an interest in or ownership of the note and deed of trust. Such claims involve the rights and interests of third parties not currently before the Court, and the outcome of any dispute between or among those parties will not have any effect upon the Debtors' bankruptcy estate. Therefore, the Bankruptcy Court currently does not have jurisdiction over such disputes. *See Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984) ("The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. . . . An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.").

*Carr v. New Century TRS Holdings, Inc. (In re New Century TRS Holdings, Inc.)*, Adv. No. 09-52251, 2011 WL 6097910, *3 (Bankr.D.Del. Dec. 7, 2011) (footnotes omitted).[17]

    (d)    <u>Motion for Reconsideration Conclusion</u>

After consideration of the evidence and arguments presented by the Whites, I conclude that they have not demonstrated a valid basis to reconsider dismissal of the Rescission and Cancellation Claims. The Motion for Reconsideration will be denied.

---

[17]This decision denied a motion for reconsideration filed by Ms. Carr regarding a decision entered on May 10, 2011. *Carr v. New Century TRS Holdings, Inc. (In re New Century TRS Holdings, Inc.)*, No. 09-52251, 2011 WL 1792544 (Bankr.D.Del. May 10, 2011). Ms. Carr also filed a second motion for reconsideration that was denied. *Carr v. New Century TRS Holdings, Inc. (In re New Century TRS Holdings, Inc.)*, 2012 WL 38974 (Bankr. D.Del. Jan. 9, 2012). Thereafter, Ms. Carr filed an appeal and the United States District Court for the District of Delaware affirmed the May 10, 2011 decision. *Carr v. Jacobs (In re New Century TRS Holdings, Inc.)*, 2013 WL 1196605 (D.Del. Mar. 25, 2013) *reconsid. denied* 2013 WL 1680472 (D.Del. Apr. 17, 2013) *aff'd* 2013 WL 5944049 (3d Cir. Nov. 7, 2013).

Conclusion

For the reasons set forth above, the Motion to Compel Discovery will be denied, the Request for Judicial Notice will be granted, in part, and denied, in part, and the Motion for Reconsideration will be denied. An appropriate order follows.

BY THE COURT:

_____
KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

Dated: December 6, 2013